IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| WILLIAM WOOD ROBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:16-CV-249 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# FINDINGS, CONCLUSIONS AND RECOMMENDATION
# TO AFFIRM THE DECISION OF THE COMMISSIONER

Plaintiff WILLIAM WOOD ROBERTSON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant NANCY A. BERRYHILL, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB) and Social Security Income benefits (SSI). For the reasons stated below, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

## I.
## PROCEDURAL RECORD

On June 26, 2013, plaintiff filed an application for DIB alleging he became disabled and unable to work on April 26, 2013 due to back problems, depression, anxiety, hypertension, and high cholesterol. (Tr. 48, 132). Plaintiff was 54 years old on the alleged onset date and 55 years old at the time he filed his application. Plaintiff filed applications for SSI on June 12, 2013 and March 19,

2014. (Tr. 124-31, 150-58). Plaintiff's claims were denied initially and on reconsideration. (Tr. 47, 60, 72).

On July 20, 2015, an ALJ held an administrative hearing in this case. (Tr. 23-46). During the hearing, plaintiff testified that since April 14, 2013 he had experienced back pain that was centered in his lower back and radiated around to both sides making it hard to breathe. (Tr. 30-31). Plaintiff testified bending over, heavy lifting and standing too long makes his back hurt. (Tr. 31). Plaintiff estimated he can lift and carry about 10 pounds, can stand approximately 20 minutes at a time, and can walk about three blocks before needing a short break. (Tr. 31-32). Plaintiff advised reclining in a chair relieves his back pain and estimated he sits in a reclined position probably seven (7) hours a day. (Tr. 32). Plaintiff reported he takes a pain killer that helps "[a] little bit." Plaintiff estimated he can operate a riding lawn mower for ten (10) minutes at a time, "might be able" to load a dishwasher, and takes the trash out "every now and then" on a dolly to a dumpster a block away. (Tr. 32-33). Plaintiff advised he is able to dress himself, although it takes "a little longer than normal," and uses a cane to help keep his balance. (Tr. 33). Plaintiff reported his legs "go to sleep" when he lies down or when he sits or stands too long. Plaintiff reported left knee pain occurring about three times a week that takes "about two days" to resolve, as well as neck pain when he reaches off to the side or turns his head a little too far. (Tr. 34).

With regard to his alleged mental impairments, plaintiff testified he had experienced depression since April 2013 but that over time medication had resolved it. (Tr. 34-35). Plaintiff reported he takes two different types of medication to sleep, and that his energy level during the day varies but is "not good" probably four times a week. (Tr. 35). Plaintiff reported he is "only eating about two meals a day," but had not lost any weight. Plaintiff reported his motivation level is poor, and that he can only spend about 30 minutes out of a day on a hobby before his back begins hurting

and he has to stop. (Tr. 35-36). Plaintiff reported poor memory for "about four years" and a varied ability to focus, as well as little patience and a tendency to anger several times a day. (Tr. 36). Plaintiff advised he spends time with his wife and grandchildren and a neighbor across the street, but reported anxiety when "around a lot of people." (Tr. 37). Plaintiff testified he does not leave the house by himself because he is afraid he will get lost. Plaintiff reported seeing black figures out of the side of his vision multiple times a day. (Tr. 37-38). Plaintiff opined that he would not be able to do a job requiring standing eight hours a day, five days a week, because it "would kill [his] back." (Tr. 39).

A vocational expert (VE) testified at the hearing that plaintiff had past relevant work (PRW) as a construction worker, a boat mechanic, and an assembler. (Tr. 43-44). The ALJ presented the VE with a hypothetical of a 54-year-old individual, with an 11th grade education and a GED, with the same vocational background as petitioner, who is limited to occasionally carrying 50 pounds and frequently carrying 25 pounds, but has the ability to stand and walk and sit and stoop. The AL then inquired as to whether the individual could do any of plaintiff's PRW. (Tr. 44). The VE replied that such an individual could not perform any of plaintiff's PRW but could perform other work, giving as representative examples work as an industrial cleaner and an order taker. The VE clarified that any transferable skills would be job specific. (Tr. 44-45).

On August 26, 2015, the ALJ issued an unfavorable decision finding plaintiff not disabled. (Tr. 5-17). The ALJ found plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since April 26, 2013, the alleged onset date. (Tr. 10). The ALJ determined plaintiff had severe impairments of "history of back and neck pain" and the non-severe impairment of depressive disorder. The ALJ found plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (Tr. 11).

The ALJ specifically found the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under Listing 1.04, and that there was no evidence that plaintiff's back disorder had resulted in an inability to ambulate effectively. (Tr. 12).

The ALJ determined plaintiff had the residual functional capacity (RFC) to perform medium work[1] but was limited to only occasional stooping. (Tr. 12). The ALJ found plaintiff can stand and/or walk at least 6 hours in an 8-hour workday, and sit at least 6 hours.

Based on his RFC determination, the ALJ found plaintiff was unable to perform any of his PRW. (Tr. 15). The ALJ found, however, that considering plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that plaintiff can perform, naming the medium, unskilled jobs of industrial cleaner and order taker as representative occupations. (Tr. 16). Based on the testimony of the VE, the ALJ concluded plaintiff had not been under a disability from April 26, 2013 through the date of his decision.

Upon the Appeals Council's denial of plaintiff's request for review on September 21, 2016, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## MEDICAL RECORD AS RELEVANT TO THE ISSUES RAISED

On July 18, 2013, a Family Nurse Practitioner at Golden Plains Community Hospital, Cynthia Coffelt, completed a Mental Capacity Assessment form and a Residual Functional Capacity

---

[1] The ALJ determined plaintiff was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently. (Tr. 12).

Questionnaire provided by legal counsel for plaintiff. (Tr. 265-67; 272-74; 282-84; 352-53). In the mental assessment, Coffelt opined plaintiff had slight limitations in the ability to understand and remember detailed instructions, to carry out detailed instructions, and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Coffelt advised plaintiff was being treated for depression that was well-controlled on a medical regimen. In the physical questionnaire, Coffelt indicated plaintiff had a diagnosis of a compression fracture at L3 in April 2013, opined his prognosis was fair to good, and identified his only symptom as low back pain. Coffelt opined plaintiff's low back pain would "often" be severe enough to interfere with the attention and concentration required to perform simple work-related tasks, and indicated the medication for his back pain could cause dizziness and drowsiness. Coffelt opined plaintiff might "possibly" need to recline or lie down during an 8-hour work day in excess of the typical morning, lunch and afternoon breaks. Coffelt estimated plaintiff could walk one city block without rest or significant pain, could sit or stand/walk 30 minutes at one time, and could sit and stand/walk 8 hours in an 8-hour workday (4 hours each). Coffelt opined plaintiff would need to be able to shift positions at will from sitting, standing or walking at a job, and would need to take unscheduled breaks during an 8-hour workday although it was "unknown" how often and how long was a "variable."

  Coffelt opined plaintiff could never lift and carry 50 lbs. in a competitive work situation, but could occasionally lift and carry 20 lbs. and frequently lift and carry less than 10 lbs. Coffelt advised plaintiff would not have any limitations in doing repetitive reaching, handling or fingering, and would be able to use his hands, fingers and arms for a full 8-hour workday. Coffelt opined plaintiff was likely to be absent from work 3-4 times a month as a result of his impairment or treatments. Coffelt skipped the question as to whether plaintiff was a malingerer. Coffelt advised plaintiff's impairment was reasonably consistent with his low back pain symptom and the functional limitations she had set

forth. In response to the question of whether plaintiff would be physically capable of working an 8-hour day, 5 days a week on a sustained basis, Coffelt indicated "job dependent answer" and opined plaintiff would not be capable of such employment if it involved "heavy lifting," but would be capable of such employment if it was "light duty."

In Onset Date Questionnaires completed the same date, Coffelt opined plaintiff had the mental limitations and restrictions outlined in the assessment since January 10, 2011, and the physical limitations and restrictions outlined in the questionnaire since April 2013. (Tr. 268; 274). On August 8, 2013, Coffelt completed a Treating Physician Mental Functional Assessment Questionnaire wherein she opined plaintiff's mental condition does not impose more than minimal limitations. (Tr. 269, 275).

On January 24, 2014, Coffelt completed a second Mental Capacity Assessment form provided by plaintiff's legal counsel. (Tr. 285-87). In her assessment, Coffelt identified plaintiff's diagnosis as depression, but opined plaintiff only had "slight" limitations in the ability to maintain attention and concentration for extended periods, to work in coordination with or in proximity to others without being distracted by them, and to interact appropriately with the general public. Coffelt advised plaintiff had moderate limitations in the ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

As early as January 10, 2011, plaintiff's recorded weight was 232 lbs. at a height of 5' 9". (Tr. 216). Records from January 6, 2012 through May 4, 2015 reflect plaintiff's recorded weight while dressed and wearing shoes ranged from 212 lbs. to 237 lbs., several of which also reflected, under "Vital Signs," what appear to be a computer-generated Body Mass Index (BMI) of 31.30 to 34.99.[2]

---

[2]"The National Institutes of Health (NIH) established medical criteria for the diagnosis of obesity in its *Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults* (NIH Publication No. 98-4083, September 1998). These guidelines classify overweight and obesity in adults according to Body Mass Index (BMI). BMI is the

(Tr. 48, 61, 162, 223, 228, 232, 237, 245, 252, 254-55, 258, 262, 278, 294, 298, 301, 304, 307, 310, 313, 318, 321).

III.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of

---

ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m$^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'

The *Clinical Guidelines* recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." SSR 02-1p: Policy Interpretation Ruling Titles II and XVI: Evaluation of Obesity (September 12, 2002).

credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

IV.
ISSUES

Plaintiff raises two grounds for reversal of the acting Commissioner's decision denying plaintiff Social Security benefits:

The ALJ's RFC finding is erroneous and is not supported by substantial evidence because the ALJ failed to consider:

1. Family Nurse Practitioner Coffelt's opinions regarding plaintiff's mental and physical limitations as a result of his impairments; and

2. The functional impact of plaintiff's obesity.

V.
MERITS

A. Consideration of The Family Nurse Practitioner's Opinion

As detailed above, nurse practitioner Coffelt, plaintiff's primary care provider from 2011 to February 2014, completed an RFC questionnaire in July 2013 opining as to plaintiff's physical limitations, necessity for unscheduled work breaks and potential absenteeism. (Tr. 14, 273). In his opinion, the ALJ noted he considered opinion evidence in accordance with the CFR and SSR requirements, but did not give Coffelt's opinions "controlling weight, as she is not an acceptable medical source." (Tr. 14). The ALJ further stated Coffelt's "opinions exceed[ed] what is reasonable

from the medical evidence of record based on the objective physical . . . examinations of the claimant, which are largely within normal limits." (*Id.*)

Plaintiff concedes the ALJ was correct in finding Coffelt was not an acceptable medical source and in not giving her opinion controlling weight. However, plaintiff contends the ALJ's finding that Coffelt's opinion exceeded what was reasonable because plaintiff's physical examinations were "largely within normal limits" was "not true." Specifically, plaintiff contends Coffelt's opined limitations were supported by her treatment notes, xrays, and MRIs, and that the ALJ improperly discounted Coffelt's opinions regarding plaintiff's physical limitations. Plaintiff contends that if the ALJ had properly considered Coffelt's opinions, he would have found plaintiff was only capable of light work which, under the Grids, would have mandated a finding of disabled. Plaintiff contends the ALJ did not comply with the relevant legal standards when considering Coffelt's opinions and concludes the ALJ's RFC finding that plaintiff can perform medium work with limited stooping is thus not supported by substantial evidence.

Initially, as conceded by plaintiff, the ALJ properly noted a nurse practitioner is not an "acceptable medical source" and did not err in according less than controlling weight to Coffelt's opinion.[3] Nurse practitioners are, however, considered "other sources," and evidence from "other sources" <u>may</u> be used to show the severity of an impairment and how it affects the individual's ability to function. *See* 20 C.F.R. §§ 404.1513(d) and 416.913(d); *Thibodeaux v. Astrue*, 324 Fed.Appx. 440, 445 (5th Cir. 2009); *see also Rush v. Astrue*, No. 3:13-cv-915-CWK-FKB, 2014 WL 1153269, *8 (S.D. Miss. Mar. 21, 2014) ("Although a nurse practitioner falls under the category of 'other

---

[3]Only an acceptable medical source may (1) establish the existence of a medically determinable impairment; (2) give a medical opinion; and (3) be considered as a treating source whose medical opinions may be entitled to controlling weight. *Thibodeaux v. Astrue*, 324 Fed.Appx. 440, 445 (5th Cir. 2009). An ALJ may appropriately accord less weight to the opinion of a nurse practitioner than to a medical doctor because a nurse practitioner is not listed as an acceptable medical source in the regulations. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991); *see also* 20 C.F.R. §§ 404.1513(a) and 416.913(a).

sources' in § 416.913(d), the ALJ is not obligated to consider evidence offered by those sources."). Here, the ALJ's decision reflects he did consider the opinions of nurse practitioner Coffelt but found they were unsupported by the medical records or, more specifically, that her opinions were not reasonable based on the medical evidence of record.

Plaintiff cites the Court to a record reflecting his first complaint of back pain on March 6, 2012. (Tr. 228). However, on March 23, 2012, plaintiff reported his back pain had resolved, he was negative for back and neck pain, and his backache was assessed as resolved. (Tr. 231-33). Plaintiff also cites the Court to the record of April 10, 2013 wherein plaintiff reported lower back pain that began two weeks prior. (Tr. 244). X-rays taken that day showed what "seem[ed] to be a subtle superior endplate of L3 compression fracture" and a moderate anterior spur at L3, but no spondylolisthesis and an otherwise normal spine, and a later MRI performed on April 29, 2013 showed a left posterior disc bulge at L2-3 with mild left lateral recess stenosis but no other significant stenosis. (Tr. 249; 256). A later lumbar MRI cited by plaintiff revealed, "[o]verall, no significant change since 4/29/2013," but a cervical MRI revealed "mild broad-based disc bulges" at C3-C4, and C5-C6 but no stenosis. (Tr. 291).

Although the Court does tend to agree with plaintiff that the xray and MRI conclusions are not necessarily "within normal limits," the Court does find the ALJ's determination that Coffelt's opinion as to plaintiff's physical limitations exceeded what was reasonable based on the objective medical evidence of record was accurate and supported by the evidence. Plaintiff's claim of a disabling back impairment is not substantiated by the above-referenced records or the additional objective medical evidence of record. Similarly, the objective medical evidence does not fully substantiate plaintiff's subjective complaint that his back pain is as disabling as alleged. *See Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991) (subjective complaints, without support of objective evidence, are not sufficient to

establish disability); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).  Records show plaintiff received only conservative treatment in the form of pain medication and muscle relaxers for his complaints of back pain, and several records, including two of his more recent examinations, reveal normal range of motion, muscle strength, and stability in all extremities with no pain on inspection.  (Tr. 295; 302).  *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) ("The absence in the record of objective factors indicating the existence of severe pain, such as persistent significant limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition justifies the conclusions of the administrative law judge.").  There is little doubt from the records and testimony that plaintiff experiences pain; however, the presence of pain is not always disabling.  *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (mild or moderate pain will not render a claimant disabled); *Richardson v. Bowen*, 807 F.2d 444, 448 (5th Cir. 1987) ("While pain can be a disabling condition, not all pain is disabling.  [Plaintiff's] allegations of pain are to be evaluated against the other evidence in the record.") (internal citations omitted).  Further, as noted by defendant, plaintiff's reported activities of daily living do not fully support his allegations of a disabling physical limitation or disabling pain.  *See Defendant's Response Brief*, at 6.

Lastly, State agency physicians assessed plaintiff's RFC based on the medical evidence of record on October 24, 2013 and February 4, 2014, finding plaintiff could perform the full range of medium work.  (Tr. 54-55, 67-68).  The ALJ assigned these physician assessments "some weight," finding they were generally consistent with the objective medical evidence of record, but determining the evidence warranted the limitation of only occasional stooping.  (Tr. 14).  These physicians' opinions provide substantial support for the ALJ's finding that plaintiff could perform a modified level of medium work.  Moreover, the record does not contain any finding by a physician – treating, consulting, or reviewing – that limited plaintiff's ability to perform beyond a modified range of

medium exertional level work. In fact, the only medical reports, evaluations or conclusions in the record generated by <u>any</u> physician, other than those of the State agency physicians referenced above, are those of the radiologists interpreting the various xrays and MRIs conducted.

The Court concludes the ALJ properly evaluated and discounted the weight to be given to the opinions of nurse practitioner Coffelt and that substantial evidence and clearly-worded regulations support the ALJ's decision.

### B. <u>Consideration of the Functional Impact of Plaintiff's Obesity</u>

As noted above, under the "Vital Signs" section of several of plaintiff's treatment notes, there are, what appear to be, computer-generated notations indicating a BMI of 31.30 to 34.99. Under the criteria set forth in the NIH guidelines (*see* FN 2), plaintiff's calculated BMI in his treatment notes would qualify as obesity. The ALJ's decision did not mention or discuss plaintiff's BMI measurements or discuss plaintiff's qualifying obesity at any level of the sequential evaluation.

Noting the ALJ was required to consider all impairments in evidence, and was required to consider any obesity when evaluating plaintiff's disability, plaintiff asserts "[t]he ALJ erred in not considering the functional impact of obesity in determining [his] RFC." Plaintiff appears to argue that by failing to address the BMI findings in the treatment notes, the ALJ presumably did not consider plaintiff's obesity or its affect on his ability to work and, therefore, did not comply with relevant legal standards. Plaintiff concludes that if the ALJ had considered the combined or cumulative functional impact or effect of his obesity on his severe back (musculoskeletal) impairment, the ALJ would have found he was limited to <u>light</u> work and, for an individual of his age, education, and work experience, the Grids would have mandated a finding of disabled.

Defendant notes, however, that plaintiff did not allege obesity was a medically determinable

impairment or a disabling condition in either of his applications for disability benefits, nor did he allege any functional limitations due to obesity in his applications, in his testimony at the administrative hearing, or in his request for review of the ALJ's decision. Instead, plaintiff raised the issue of his obesity for the first time in this appeal. Defendant thus contends plaintiff did not put the issue of any alleged limitations resulting from obesity before the ALJ and, consequently, the ALJ was under no obligation to consider a condition never alleged to be disabling or functionally limiting. Defendant argues that even if plaintiff's condition was before the ALJ simply by being documented in the treatment notes, that plaintiff's BMI calculations alone, while possibly establishing the existence of obesity, did not establish an existing impairment in and itself. Defendant notes neither plaintiff's treatment notes nor any other medical source concluded plaintiff had any limitations specifically due to his weight. Defendant contends that because there was no evidence to support a finding either that additional limitations due to obesity were warranted or that physical limitations included in the RFC assessment limiting plaintiff to medium work did not properly accommodate plaintiff's weight, plaintiff cannot show any prejudice from the ALJ's omission of an analysis relating to obesity. Defendant concludes the ALJ did not commit any reversible error in failing to specifically address plaintiff's weight, BMI calculations or obesity, or its affect on his ability to work, when determining plaintiff's RFC in his decision.

Obesity should be considered in combination with other impairments in making the RFC determination and in discussing the claimant's ability to perform sustained work activities. *Beck v. Barnhart*, 205 Fed.Appx. 207, 212 (5th Cir. 2006) (citing SSR 02–1p). While this Court does not find a plaintiff must <u>allege</u> disability due to obesity or even that an obesity-related disability is a medically determinable impairment, there should be some indication in the administrative applications or medical record itself that a claimant's obesity has caused some level of functional limitation, has

exacerbated other existing ailments, or has otherwise affected the claimant. Here, plaintiff's treatment notes reflect what appear to be computer-generated notations indicating a BMI consistently in the obese range of the NIH guidelines; however, no acceptable medical source ever diagnosed plaintiff with obesity or identified plaintiff's obesity as a chronic problem. Plaintiff's health care provider never recommended any care for his obesity or addressed his obesity in the "Assessment/ Plan" set out for plaintiff's level of care. Neither the medical record nor testimony reflect any limiting or exacerbating effect of plaintiff's weight on his other impairments or his ability to do work-related activities. Based on such a record, it would be difficult to fault an ALJ for failing to independently "zero in" on simple entries under the "Vital Signs" portions of various treatment notes, to independently recognize the significance of these elevated BMI calculations, or to independently determine the presence of plaintiff's obesity and then address it in his decision as an existing risk factor.

Nevertheless, the Court finds that based on the consistent BMI findings in the treatment notes, as well as a few other references in the notes that plaintiff was overweight or had an obese abdomen, it would have been the better course for the ALJ to discuss plaintiff's obesity in assessing his RFC. However, as there were no opinions from any medical sources concluding plaintiff had any limitations specifically due to his weight or any evidence or testimony that his weight exacerbated his other impairments, and as plaintiff has not provided any evidence to show either that additional limitations were warranted due to plaintiff's weight or that the limitations included in the RFC assessment did not accommodate plaintiff's obesity, the Court cannot find any prejudice for the ALJ's failure to include an evaluation of obesity in his decision.

The Court further notes plaintiff has not provided any independent evidence that he is only capable of performing light work. Such a finding would indeed result in a finding of disability, but

there is no medical evidence to support a finding that plaintiff is only capable of light work. Even if there was some evidence to support a finding of light work, the Court's role is limited to determining whether substantial evidence exists in the record to support the Commissioner's factual findings and whether any errors of law were made. *See Anderson*, 887 F.2d at 633. Federal courts do not conduct a *de novo* review and may not substitute their judgment for the determination made by the defendant Secretary. *See Newton*, 209 F.3d at 452.

In this case, the ALJ's decision is supported by substantial evidence on the record as a whole, and the ALJ applied the proper legal standards in reaching his decision.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff WILLIAM WOOD ROBERTSON not disabled and not entitled to a period of disability benefits be AFFIRMED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED December 11, 2017.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

# * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).